IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTT ALLEN FOSTER,

      Petitioner,

v.                                          CIV 18-0429 JB/KBM

RAYMOND SMITH, Warden and
HECTOR BALDERAS, Attorney General
for the State of New Mexico,

      Respondents.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Petition Under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody ("Petition") (*Doc. 1*) and the

Supplement (*Doc. 6*) and Supplemental Amendment (*Doc. 7*), filed by Scott Allen Foster

("Petitioner") on May 7, 2018, June 4, 2018 and August 13, 2018, and fully briefed on

January 18, 2019 (*Doc. 15*). The Honorable James O. Browning referred this case to

me to conduct hearings, if warranted, including evidentiary hearings, and to perform any

legal analysis required to recommend to the Court an ultimate disposition of the case.

*Doc. 4.* Having reviewed the submissions of the parties and the relevant law, the Court

recommends that the Petition be denied on its current record.[1]

---

[1] The Court need not hold an evidentiary hearing, as Petitioner has not made any showing that his claims rely on "a new rule of constitutional law, made retroactive . . . by the Supreme Court[,]" "a factual predicate that could not have been previously discovered through the exercise of due diligence[,]" or that " the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty[,]" as required by 28 U.S.C. § 2254(e)(2).

## I.      Background Facts and Procedural Posture

Petitioner is in state custody pursuant to the Amended Judgment, Sentence, and Order Determining Habitual Offender Status, which was filed October 27, 2014, in the Ninth Judicial District Court, Curry County, New Mexico. *See Doc. 14*, Ex. B. Following a one-day trial on June 20, 2014, a jury found Petitioner guilty of first-degree trafficking in controlled substances (Count 1) and second-degree conspiracy to commit trafficking in controlled substances (Count 2). *Id.* at 1. These counts arose during an undercover narcotics investigation conducted by Phil Caroland, a Curry County Sheriff's Deputy at the time, which targeted the sale of crack cocaine in Clovis, New Mexico. *Doc. 14-4*, Ex. BB, at 196. During the investigation, a confidential informant, Michael Robinson, and an undercover police officer, Kandi Garcia, conducted approximately 75 controlled buys of illegal drugs. *See id.* at 196-97. One such buy took place on November 16, 2012, when Robinson and Officer Garcia entered a house located at 1113 W. 10th Street, where Petitioner was present, to purchase cocaine. *Id.* at 203, 215. During the transaction, Officer Garcia was equipped with a video recording device; however, the recording suffered from poor sound quality and the conversations, largely, could not be understood. *Id.* at 204, 217, 218. Upon emerging from the home at 1113 W. 10th Street, Officer Garcia and Robinson returned to the police station, where they produced a substance which was ultimately determined to be 8/10 of a gram of crack cocaine. *Id.* at 179-82, 204-05.

Deputy Caroland was married to Monica Caroland, a lawyer who worked in the law office of Petitioner's trial attorney, Randall Harris, at the time of the November 16, 2012 controlled buy. *See Doc. 1-1* at 28. Mrs. Caroland left Mr. Harris's firm in

December 2012, however, well before Mr. Harris entered his appearance for Petitioner in April 2013. *See id.* at 27-28, 82; *Doc. 14-6* at 108. Deputy Caroland testified that he did not have access to any information concerning the investigation or prosecution of Petitioner by virtue of his wife's employment at the Harris Law Firm. *Doc. 1-1* at 29. Although Deputy Caroland was sworn in by the Curry County Sheriff as a certified police officer, he later learned that a clerical error resulted in his commission card not being properly filed. *Id.* at 29-30.

Petitioner appealed his drug trafficking convictions. *Doc. 14-1*, Ex. C & Ex. D. On September 16, 2015, the New Mexico Court of Appeals proposed summary affirmance as to the four issues he raised but proposed reversal of his conspiracy conviction, asking *sua sponte* (1) whether convictions for drug trafficking and conspiracy to commit drug trafficking, which arise from a single transaction, violate double jeopardy; and (2) whether Petitioner had been illegally sentenced. *Doc. 14-1*, Ex. F. Ultimately, after considering memoranda of the parties, the Court of Appeals affirmed the trial court in an April 18, 2016 Memorandum Opinion. *Doc. 14-1*, Ex. K. On June 10, 2016, the New Mexico Supreme Court denied a petition for certiorari. *Doc. 14-1*, Ex. O.

Mr. Harris died on March 2, 2015. *Doc. 14-6*, Ex. DD. Thereafter, on August 10, 2015, Petitioner's new attorney filed a state petition for writ of habeas corpus, alleging that Mr. Harris's representation was constitutionally defective because he: (1) was impaired by a drug and alcohol habit throughout the course of the representation; (2) failed to disclose the "irreconcilable conflict" created by his employment of Monica Caroland; (3) failed to show that Deputy Caroland and Officer Garcia lacked the proper appointment as commissioned law enforcement officers; (4) failed to move for

3

disclosure of Officer Garcia's supplemental report; and (5) failed to take certain actions with respect to the confidential informant, Michael Robinson. *Doc. 14-2*, Ex. Q. The state district court denied the petition. *Doc. 14-6*, Ex. DD.

Petitioner sought a writ of certiorari from the New Mexico Supreme Court on the following issues: (1) whether trial counsel Mr. Harris was ineffective due to an impairment; (2) whether Mr. Harris was operating under an irreconcilable conflict; and (3) whether Deputy Caroland was acting without lawful authority. *See Doc. 14-6*, Ex. HH. The New Mexico Supreme Court denied the petition for writ of certiorari by Order, without discussion, on February 15, 2018. *Doc. 14-6*, Ex. II. Because the Supreme Court's Order did not include any discussion or rationale, the Court is left to consider, for purposes of its § 2254 analysis, the rationale supplied by the state trial court.[2] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Petitioner filed his federal habeas petition on May 7, 2018. *Doc. 1*. Parroting many of the factual and legal assertions offered by counsel in his state habeas petition and on direct appeal, Petitioner enumerates the following grounds for relief: (1) "Defense counsel Randall Harris [sic] impairment when representing Petitioner"; (2) "Convicted Felon Michael Robison [sic]"; (3) "Randall Harris's undisclosed irreconcilable conflict"; (4) "Lack of proper appointments of Phil Caroland and Kandi Garcia as commissioned law enforcement officers"; (5) "Double Jeopardy"; and

---

[2] In *Wilson*, the United States Supreme Court clarified that when a state supreme court decision "does not come accompanied with . . . reasons," the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

(6) "Illegal Enhancement."[3] Additionally, Petitioner alleges the grounds of "Undercover Sting Operation" and "Additional acts showing innefective [sic] assistance of counsel" in his Petition (*Doc. 1* at 14), but the Court finds that these grounds are better addressed in conjunction with his other ineffective assistance of counsel claims, rather than as distinct grounds.

Petitioner filed his Petition after April 24, 1996; thus, it is subject to the terms of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"). For purposes of the "in custody" requirement of 28 U.S.C § 2254, Respondents concede that Petitioner was in custody at the filing of the Petition and the Answer. *Doc. 14* at 5.

## II.     Legal Standard

Federal courts have statutory authority under Section 2254, as amended by AEDPA, to issue habeas corpus relief for persons in state custody. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). AEDPA "circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings," subject to only two exceptions. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

A federal court may grant relief from a state court decision only where a petitioner demonstrates that the trial court's resolution of his claims was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable

---

[3] Petitioner's first four grounds were asserted in the original Petition he filed May 7, 2018. *See Doc. 1* at 5, 7, 8, 10, 14. Then, on August 13, 2018, he filed his "Supplemental Amendment" in which he moved to "amend" the issues of "Double Jeopardy" and "Illegal Enhancement." *Doc. 7* at 1. For continuity sake, the Court refers to these two additional issues as grounds five and six. Respondents concede that Petitioner exhausted available state-court remedies as to these grounds by seeking discretionary review of the court of appeals' April 18, 2016, Memorandum Opinion. *Doc. 14* at 5 (citing *Doc. 14-1*, Ex. K and *Doc. 14-1*, Ex. L at 1, 8-10).

determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1), (2)). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by "clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)).

Under Section 2254(d)(1), the threshold question asks whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (citation omitted); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004) (internal quotations omitted)).

First, a state-court decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth" by the Supreme Court or "if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Hooks*, 689 F.3d at 1163 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). The state court is not required to cite to, or even be aware of, Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Second, "[a] state-court decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to

the facts of petitioner's case.'" *Hooks*, 689 F.3d at 1163 (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). AEDPA precludes issuance of a writ simply because the federal court concludes in its independent judgment that the state court applied the federal law erroneously or incorrectly. *Byrd*, 645 F.3d at 1166. Instead, the application must also be "objectively unreasonable." *Id.* As long as "fairminded jurists could disagree" as to the correctness of the state court's decision, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), this "'highly deferential standard for evaluating state-court rulings[ ]' . . . demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Even if a federal habeas court finds that the state court decision was contrary to or an unreasonable application of clearly established federal law, habeas relief may not issue unless the violation is of a sort that warrants such relief. *See e.g., Williams*, 529 U.S. at 375 ("It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."); *Wilson v. Sirmons,* 536 F.3d 1064, 1073 (10th Cir. 2008) ("If we find that the state court erred, we still must determine whether the error is a structural defect 'in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards.'") (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008).

Finally, because Petitioner is proceeding *pro se*, the Court construes his pleadings liberally. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The Court will not, however, "take on the responsibility of serving as

the litigant's attorney in constructing arguments and searching the record." *Id.*

III.    **Motion for Appointment of Counsel**

Along with his original Petition, Petitioner filed a Motion for Appointment of Counsel. *Doc. 3.* On January 29, 2019, this Court denied that motion, noting that it is generally unnecessary to appoint counsel before a case has reached the stage of the proceedings where an evidentiary hearing may be required. *Doc. 16.* Accordingly, the Court characterized Petitioner's request for appointment of counsel as premature, denying it without prejudice. *Id.*

The Court has now had the opportunity to consider the merits of the Petition as well as Respondents' Answer. Because it determines herein that the Petition is without merit and that no evidentiary hearing is required, it likewise finds that it is unnecessary to revisit its previous decision to deny the appointment of counsel in this case.

IV.    **Discussion**

A.  **Exhaustion and Procedural Default**

The petitioner in a habeas action brought pursuant to 28 U.S.C. § 2254 must establish that he has properly exhausted available state-court remedies by raising his federal claim or claims in the state's highest court, either by direct review or in post-conviction proceedings. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th. Cir. 1994). Respondents concede that Petitioner's claims have been properly exhausted in the state courts and are ripe for review, save one claim. *See Doc. 14* at 4-5. Respondents maintain that Petitioner's second ground for relief regarding Michael Robinson has not been properly exhausted. *Id.* at 4.

Petitioner clearly raised issues as to Robinson in his state habeas petition.[4] Indeed, many of the assertions in his federal habeas petition are identical to those made in his state habeas petition. *See, e.g., Doc. 1* at 28-29. Yet, Petitioner failed to assert any claims related to Robinson in his petition seeking a writ of certiorari from the New Mexico Supreme Court. *See Doc. 14-6* at HH. Because he did not give the State's highest court the opportunity to review his claims related to Robinson, they have not been *properly* exhausted.

Respondents describe these claims as "technically exhausted" but "procedurally defaulted." *Doc. 14* at 4, 8. They suggest that "[i]t is unlikely that [Petitioner] would be able to return to state court to present these claims, thus making a second appearance before the New Mexico Supreme Court nearly impossible." *Id.* at 9. More specifically, Respondents note that New Mexico Rule 5-802(I) NMRA enumerates only limited circumstances in which a petitioner may file a second or successive petition. *Id.* (citing NMRA 5-802(I)). State-court remedies are technically exhausted when they are no longer available, regardless of the reason for their unavailability. *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court." *Id.* at 93. Instead, if Petitioner procedurally defaulted those claims, he generally is barred from asserting them in a federal habeas proceeding. *Id.* at 92-93.

---

[4] By way of example, Petitioner argued in his state habeas petition that Mr. Harris was ineffective because he failed to file a pretrial motion for production of a supplemental report by Officer Garcia in order to impeach the testimony of Robinson, failed to make discovery requests or file motions to suppress related to Robinson, filed only a conclusory motion to strike Robinson's testimony, failed to file a motion to produce the criminal history of Robinson, failed to file a motion in limine requiring a voir dire examination before Robinson could testify, and failed to file a motion to suppress regarding Robinson's admitted drug use. *Doc. 14-2*, Ex. Q, at 13-14, 16.

Accordingly, ground two of the Petition should not be considered by this Court unless Petitioner can demonstrate cause and prejudice for failing to comply with the State's procedural rules or a fundamental miscarriage of justice, *see Smallwood v. Gibson*, 191 F.3d 1257,1268 (10th Cir. 1999), or if the court determines that the claims can be easily resolved on the merits, *see* 28 U.S.C. § 2254(b)(2); *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000). To show "cause" for failing to comply with a state's procedural rules, a petitioner must show that "some objective factor external to the defense impeded his compliance with New Mexico's procedural rules." *Watson v. New Mexico*, 45 F.3d 385, 388 (10th Cir. 1995) (citations and quotation marks omitted). Petitioner has made no such allegation or showing here. To demonstrate a "fundamental miscarriage of justice," a petitioner must make a "colorable showing of factual innocence." *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997) (citation omitted). A claim of factual innocence requires a petitioner to "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) (citation and quotation omitted). This evidence must be so convincing that, had it been introduced at trial, no reasonable juror would find the petitioner guilty. *Id.* Petitioner has submitted no new evidence to make a showing of factual innocence. As such, his procedurally-defaulted claims may not proceed under the "fundamental miscarriage of justice" test. Moreover, his second ground for relief cannot be easily disposed of on the merits. Therefore, the Court concludes that Petitioner's failure to seek certiorari review of his claim(s) related to the use of Michael Robinson as a confidential informant and as a

witness at trial is not excused. These claims are procedurally defaulted and should not be considered by this Court.

### B. Ineffective Assistance of Counsel Grounds

To establish ineffective assistance of counsel, a litigant must satisfy a two-part test. First, he must show that counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must show that counsel's deficient performance prejudiced him. *Id.* at 687. To demonstrate that counsel was ineffective, the litigant must satisfy both prongs outlined in *Strickland*. *See id*. The Court may address each of these components in any order and need not address both if the litigant makes an insufficient showing on one. *United States v. Dowell*, 388 F. App'x. 781, 783 (10th Cir. 2010) (citing *Strickland*, 466 U.S. at 697).

In demonstrating that counsel's performance was deficient under the first prong of the *Strickland* test, "judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance must be evaluated considering all the circumstances. *Id.* at 688. In addition, to establish prejudice under the second prong of the *Strickland* test, a petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Surmounting *Strickland's* high bar is never easy." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citation omitted). When a *Strickland* challenge is coupled with the "highly deferential" standards of § 2254, the litigant's burden of proving

unreasonableness becomes even more difficult. *Id.* The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

A number of Petitioner's grounds for relief fall under the umbrella of ineffective assistance of counsel. In the most clearly stated grounds, Petitioner argues that Mr. Harris rendered constitutionally defective representation by (1) providing legal representation while impaired by a drug and alcohol habit; (2) failing to disclose an "irreconcilable conflict" resulting from his employment of Monica Caroland; and (3) failing to discover "that neither Deputy Caroland nor Officer Garcia were commissioned law enforcement officers . . . ." *Doc. 1* at 5, 8, 10; *Doc. 1-1* at 13-15. Additionally, Petitioner argues that there were "[a]dditional acts" showing Mr. Harris's ineffectiveness, including facts associated with the "Undercover Sting Operation." *Doc. 1* at 14; *Doc. 1-1* at 11. For example, he maintains that Mr. Harris failed to obtain a supplemental police report prepared by Officer Garcia, failed to make adequate discovery requests, failed to file motions to suppress despite compelling grounds, filed ineffective motions to strike the testimony of Officer Garcia and Robinson, and failed to conduct a proper investigation. *Doc. 1-1* at 11, 16. But these issues involve Mr. Harris's decisions related to trial tactics for which he is afforded wide latitude and over which Petitioner must overcome a presumption of sound trial strategy. *See Strickland*, 466 U.S. at 689. Petitioner has done nothing to overcome this presumption. Any claim related to the purported "[a]dditional acts showing ineffective assistance of counsel" or the "Undercover Sting Operation" should be denied.

As for the three more developed ineffective-assistance claims, the Court will analyze each in turn.

### i. Randall Harris's alleged impairment

Notably, Petitioner's criminal jury trial took place in the Ninth Judicial District Court, the same court to which this Court must turn for evaluation of the State's rationale for denial of habeas relief. *See supra* Part I. On collateral review, the state trial court considered and rejected Petitioner's claim that a drug and alcohol impairment by Mr. Harris rendered his representation of Petitioner ineffective. *Doc. 14-6*, Ex. DD. The trial court noted that when the question of Mr. Harris's possible impairment arose during jury selection, it "directly addressed Mr. Harris about the issue and found that [he] was not impaired." *See Doc. 14-6*, Ex. DD, at 4. The court explained that it had been "in close proximity to Mr. Harris and made an informed ruling on the issue of Mr. Harris's impairment." *Id.* According to the court, neither its personal observations nor the trial record supports the conclusion that Mr. Harris was impaired during his representation of Petitioner at trial. *Id.* at 5.

At the December 28, 2017 hearing on Petitioner's state habeas petition, Mr. Harris's former administrative assistant, Debbie Phillips, who worked closely and consistently with Mr. Harris before and during Petitioner's trial, swore that Mr. Harris was not impaired by drugs and/or alcohol at the time of jury selection or on the day of trial. *Id.* at 4. Having heard Ms. Phillips' testimony to this effect and noting that Mr. Harris is now deceased and no longer Ms. Phillip's employer, the court expressly found Ms. Phillips to be a credible witness. *Id.* Additionally, the trial court noted that Petitioner himself testified at the December 28, 2017 hearing that he was "not concerned" about

any impairment by Mr. Harris, even though he reported smelling alcohol on Mr. Harris at one point during trial. *Id.* Significantly, Petitioner did not raise the issue of any impairment by Mr. Harris at the time of trial. *Id.*

Ultimately, the trial court applied the *Strickland* test and concluded that Petitioner failed to show that Mr. Harris's representation was not that of a "reasonable, competent attorney" or that "but for counsel's 'error,' there was a reasonable probability that the result of the conviction proceedings would have been different." *Id.* at 5. As noted by Respondents, the trial court was in an ideal situation to personally observe and evaluate any possible impairment by Mr. Harris and its effect on his representation of Petitioner. *See Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) (noting that the presiding judge on post-conviction review was "ideally situated" to assess the petitioner's statements at sentencing because she was also the sentencing judge).

Petitioner has failed to satisfy his § 2254(d) burden, as he cannot demonstrate that the trial court determined the facts concerning Mr. Harris's purported impairment in an unreasonable manner or that its decision under *Strickland* was contrary to or involved an unreasonable application of clearly established federal law. Having reviewed the record as a whole, including the trial transcript, the Court is satisfied that there is at least a reasonable argument that counsel satisfied *Strickland's* deferential standard. As to ground one, the Court recommends denial of the Petition.

### ii. Randall Harris alleged "irreconcilable conflict"

In addition to his purported impairment, Petitioner also suggests that an "irreconcilable conflict" of interest, of which he was unaware at the time of trial, rendered Mr. Harris's representation ineffective. *Doc. 1* at 8; *Doc. 1-1*, at 4. To establish

14

ineffective assistance of counsel, a petitioner must demonstrate that his attorney's performance was adversely affected by an "actual conflict of interest," as opposed to the "possibility of conflict." *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

In an attempt to show an actual conflict of interest, Petitioner relies heavily upon the rationale of Judge Armijo of this District in *United States v. Green*, 09cr0311 MCA/WPL (D.N.M. Feb. 14, 2012). There, Mr. Harris also represented the defendant in a criminal prosecution. *See Green*, 09cr0311 MCA/WPL, Doc. 229 at 2. And as is the case here, Phil Caroland led the investigation that resulted in charges against the defendant.[5] *Id.* at 1-2. Immediately before trial in *Green*, the federal prosecutor informed the Court that Phil Caroland, a key witness for the Government, was married to an associate working in Mr. Harris's small law office. *Id.* at 2. Mr. Harris assured the Court, however, that he had established a firewall within his office so that Mrs. Caroland would have no involvement or access to information regarding the defendant's case. *Id.*

Sixteen weeks after the defendant was convicted in *Green*, a subsequent attorney filed a motion for new trial on her behalf, grounded in part on the theory that Mr. Harris had represented her under a conflict of interest and that her attempt to waive that conflict was invalid. *Id.* at 4. Defendant submitted sworn affidavits calling into question whether Mr. Harris had actually created the firewall he discussed with the court and whether any such firewall *could* in fact be established in light of the organizational layout of his law office. *Id.* at 11. The defendant there maintained that Mr. Harris made affirmative and misleading representations concerning the extent and effectiveness of a

---

[5] In contrast to this case, in *Green*, Phil Caroland himself acted in an undercover capacity, entering the defendant's medical office while wearing a concealed recording device and seeking a prescription for methadone. *See Green*, 09cr0311 MCA/WPL, Doc. 229, at 2.

firewall. *Id.* at 12. According to the Court, this new evidence was material to the defendant's Sixth Amendment right to conflict-free counsel. *Id.* The Court determined, unequivocally, that "Mr. Harris was indeed conflicted," noting that under the New Mexico Rules of Professional Conduct, Mrs. Caroland could not have represented the defendant and that, as an associate of Mr. Harris, her conflict was imputed to Mr. Harris. *Id.* at 13-14. The Court acknowledged that the defendant could have nevertheless knowingly waived the conflict but reasoned that the evidence presented suggested that "Mr. Harris may have misrepresented the actions he took to ensure a firewall around Mrs. Caroland." *Id.* at 16. According to the Court, the evidence suggested that either no firewall was actually contemplated by Mr. Harris or, alternatively, that the firewall put into place was effectively a sham. *Id.* The Court provided the following admonishment to Mr. Harris:

> Trust is at the very core of an attorney-client relationship. It is of concern to this Court that Mr. Harris may have represented [the] [d]efendant under a conflict of interest, where a conflict was not validly waived, and under circumstances whereby [the d]efendant, the Court, and possibly the Government may have been misinformed as to the nature and extent undertaken by him to protect her interests.

*Id.* at 19.

Here, Petitioner submits that the "identical facts existed when the Harris Law Firm represented" him. *Doc. 14-2*, Ex. Q, at 6; *see also Doc. 14-6,* Ex. HH, at 5. But as concerning as Mr. Harris's actions or inactions were in *Green*, the Court is simply not confronted with the same concerns here. As the state habeas court found, even though Mrs. Caroland was working at Mr. Harris's firm at the time Petitioner was investigated, including at the time of the November 16, 2012 controlled buy, she was no longer

working at the firm by the time of Petitioner's criminal prosecution. Indeed, the affidavit submitted by Mrs. Caroland states that she did not work with Mr. Harris's law firm in 2013, having left in December 2012. *Doc. 1-1* at 82. Significantly, Petitioner was not indicted until March 2013, nor arrested until August 2013. *See Doc. 14-6* at 104, 110. And Mr. Harris's entry of appearance on Petitioner's behalf came four months *after* Mrs. Caroland left his law office, in April 2013. *See id.* at 108. These facts are easily distinguishable from those in *Green.*

The state habeas court reached the same conclusion, determining that the conflict which burdened Mr. Harris's representation of the defendant in *Green* did not similarly burden his representation of Petitioner in this case. *Doc. 14-6* at 45. In fact, it found that no conflict existed at all. *Id.* Critically, Petitioner has not shown that the state habeas court's decision regarding Mr. Harris's purported conflict of interest constitutes an objectively unreasonable application of clearly established federal law. Instead, the Court finds the state habeas court's determination to be perfectly reasonable. The Court recommends that the Petition be denied as to ground three.

### iii. Deputy Caroland and Officer Garcia's Commissions as Law Enforcement Agents

In ground four, Petitioner challenges the "lack of a proper appointment of Phil Caroland and Kandi Garcia as commissioned law enforcement officers." *Doc. 1* at 10. Petitioner maintains that if Mr. Harris had conducted a basic investigation of Deputy Caroland and Officer Garcia's commissions, he would have been able to prevent them from testifying at trial and would have nullified the Grand Jury Indictment. *Doc. 1-1* at 14-15. Petitioner reasons that the lack of commissions rendered Officer Caroland without the authority to arrest or charge him. *Id.* at 9. Respondents insist that, even

apart from the issue of the validity of the officers' commissions, this claim must fail because Petitioner cannot demonstrate that he was prejudiced by any issue with these officers' commissions. *Doc. 14* at 15. This Court agrees.

The state habeas court recounted testimony from William Elliott, Private Investigator, provided at the December 28, 2017 hearing. *Doc. 14-6* at 46. According to the court, Mr. Elliott showed that Deputy Caroland's commission card had not been properly filed, and neither Deputy Caroland nor the State contested this showing. *Id.* Deputy Caroland provided testimony that he believed his commission card had been properly filed but subsequently learned that there had been a clerical error that affected its filing. *Id.* at 47. The state habeas court found that while a clerical error had caused "an issue" with the filing of Deputy Caroland's commission card, it was due to no fault of Deputy Caroland, and he was not aware of the error at the time of Petitioner's case. *Id.* Having found that Deputy Caroland was at all relevant times a certified law enforcement officer, the state habeas court determined that Petitioner failed to demonstrate any prejudice. *Id.* As to Officer Garcia, the state habeas court noted that Petitioner had presented no evidence of her commission status, nor any evidence of any prejudice from a defective commission. *Id.* Thus, no facts supported Petitioner's claims in this regard. *Id.*

The Court cannot say that the state habeas court made unreasonable determinations of fact as to the officers' certifications or commissions in light of the evidence presented. Nor has Petitioner shown that the state habeas court's decision as to the officers' commissions constitutes an objectively unreasonable application of clearly established federal law. Despite the issue with the filing of Deputy Caroland's

commission card, the evidence suggests that Deputy Caroland *was* a certified law enforcement officer at the time of the subject investigation and at the time of Petitioner's arrest and prosecution. Under these circumstances, Mr. Harris's failure to pursue any challenge to the commissions of Deputy Caroland and Officer Garcia was not constitutionally defective, and the Petition should be denied on this ground.

### C. Claims in Petitioner's Supplemental Amendment

In his Supplemental Amendment, Petitioner seeks to add the issues of "Double Jeopardy" and "Illegal Enhancement" to the grounds for relief asserted in his Petition. *Doc. 7.* Petitioner offers no factual assertions in support of these grounds in his Supplemental Amendment; however, the issues were previously addressed by New Mexico Court of Appeals on direct appeal. Indeed, the Court of Appeals initially proposed reversing Petitioner's convictions on these grounds. *Doc. 14-1*, Ex. F, at 5.

### i. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 695-96 (1993). Here, the Court surmises that Petitioner asserts double jeopardy on the basis that he received multiple punishments for the same offense. The determination of whether Petitioner's "punishments are multiple in violation of the Double Jeopardy Clause is essentially one of legislative intent." *Dennis v. Poppel*, 222 F.3d 1245, 1251 (10th Cir. 2000). Critically, federal courts must "defer to a state court's interpretation of state law in determining whether an

incident constitutes one or more than one offense for double jeopardy purposes."

*Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995) (citations omitted).

*Swafford v. State*, 810 P.2d 1223 (N.M. 1991) provides the framework under

New Mexico law for analyzing claims of double jeopardy for convictions under multiple

statutes. The *Swafford* test inquires:

> whether the conduct underlying the offenses is unitary, i.e., whether
> the same conduct violates both statutes. If the conduct is non-unitary,
> then multiple punishments would not violate the Double Jeopardy
> Clause. If the conduct *is* unitary, the court must then proceed to the
> second prong of the test, which asks whether the legislature intended
> multiple punishment for unitary conduct.

*Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998) (quoting *Swafford*, 810 P.2d at

1234) (internal citations and quotations omitted) (emphasis added). The New Mexico

Supreme Court explained in *Swafford* that conduct is non-unitary if the "events are

sufficiently separated by either time or space" or if "the quality and nature of the acts or

. . . the objects and results involved" are distinguishable. *Swafford*, 810 P.2d at 1233-34.

Federal courts have recognized that "conspiracy to commit a crime is not the

same offense as the substantive crime for double jeopardy purposes, because the

agreement to do the act is distinct from the [completed] act itself." *United States v.*

*Fornia-Castillo*, 408 F.3d 52, 69 (1st Cir. 2005) (internal quotation marks and citations

omitted). Further, "[u]nder New Mexico law, courts have upheld separate convictions for

conspiracy to commit trafficking and the act of trafficking when the evidence showed

more than just the exchange of drugs for money." *State v. Silvas*, 343 P.3d 616, 622

(N.M. 2015). Nevertheless, here, the Court of Appeals expressed initial concerns that

Petitioner's conviction for trafficking and conspiracy to commit trafficking for a single

sale of drugs may be a violation of double jeopardy protections, citing *Silvas. See*

*Doc. 14-1*, Ex. F, at 5.  In *Silvas*, the New Mexico Supreme Court held that double jeopardy precluded the defendant's convictions for trafficking and conspiracy where both offenses were premised on a singular sale of drugs to another woman. *Silvas*, 343 P.2d at 621.

Here, though, after considering the arguments of the parties through briefing, the Court of Appeals was able to discern two separate factual bases for Petitioner's drug trafficking and conspiracy convictions. Distinguishing the facts in Petitioner's case from those in *Silvas*, the court explained:

> [I]t appears that the State's theory was that [Petitioner] conspired with Sharon Kirven and Bobby Molett to retrieve the drugs from the bedroom, and [Petitioner] sold the drugs to Robinson. Therefore, the State asserts that the conspiracy agreement was among [Petitioner], Kirven, and Molett, which was separate and apart from the drug sale to Robinson. The record reflects that there was evidence presented that it was Kirven's house; Molett retrieved the drugs from the bedroom after [Petitioner] gave him permission to do so; and [Petitioner] sold the drugs to Robinson.

*Doc. 14-1*, Ex. I, at 10-11. Thus, in the view of the Court of Appeals, Petitioner's assent to and direction of Kirven and Molett in the sale of drugs justified the conspiracy conviction while his involvement in the actual exchange of drugs for money with Robinson supported his trafficking conviction. *See Doc. 14-1*, Ex. I, at 9-11; *Doc. 14-1*, Ex. K, at 3-4. Having determined that Petitioner's conduct was non-unitary, it was unnecessary for the court to determine whether the legislature intended multiple punishments. *See Swafford*, 810 P.2d 1234.

The Court is satisfied that the state court's application of federal law on the issue of double jeopardy was a reasonable one. Although the offenses of drug trafficking and conspiracy to commit drug trafficking may not have been substantially separated in time or space, the quality and nature of the acts supporting these convictions *was*

distinguishable. *See Lucero*, 133 F.3d at 1320-22 (concluding that although there was no significant separation of conduct by time or place, the acts related to the offenses were of a different quality or nature and were therefore non-unitary). Once again, it was the actual exchange of drugs for money with Robinson that constituted drug trafficking. And it was the assent to and direction of his co-conspirators that constituted conspiracy to commit drug trafficking, regardless of whether the drug transaction was completed. As such, the Court cannot conclude that the decision of the New Mexico Court of Appeals to deny Petitioner's double jeopardy claim was contrary to, or involved an unreasonable application of, clearly established federal law. Nor was it based on any unreasonable determination of the facts in light of the evidence presented. The Court recommends that the Petition be denied on the double jeopardy issue.

### ii. Illegal Sentencing Enhancement

In the sixth and final ground, Petitioner asserts that he was subject to an "Illegal [Sentencing] Enhancement." *Doc. 7*. Prior to his drug trafficking conviction in the underlying case, Petitioner was twice convicted of drug trafficking. *Doc. 14-1*, Ex. I, at 11. One of those prior trafficking convictions was used to enhance his trafficking offense in this case from a second-degree felony to a first-degree felony. *Id*. at 12. The second trafficking conviction, along with a conviction for criminal solicitation, was used to enhance Petitioner's sentence under the habitual offender statute. *Id*. On direct appeal, Petitioner asserted that his sentence was illegal because the State failed, with respect to his criminal solicitation conviction, to prove the requisite conviction-crime sequence. *Id*. at 12. Specifically, he submitted that the State failed to establish that he committed criminal solicitation *after* his conviction for possession with intent to distribute. *Id*.

Presumably, Petitioner intends to advance the same illegal-sentencing-enhancement argument here. *See Doc. 7.*

In addressing his sentencing argument on direct appeal, the Court of Appeals quoted the New Mexico Supreme Court in *State v. Linam*, 600 P.2d 253 (N.M. 1979):

> [I]t is inherent in the habitual criminal act that, after punishment is imposed for the commission of a crime, the increased penalty is held *In terrorem* over the criminal for the purpose of effecting his reformation and preventing further and subsequent offenses by him. Thus the use of the words "upon conviction of such second felony" or "third felony" as used in the statute must be held to mean felonies committed subsequent to the dates of the convictions relied on to effect an increase of the penalty. Otherwise the reform object of the legislation to provide a deterrent from future crimes would not be realized.

*Doc. 14-1*, Ex. I, at 13 (quoting *Linam*, 600 P.2d at 255). In *Linam*, the New Mexico Supreme Court found "no direct proof that each of the offenses was committed subsequent to the date of the next preceding conviction relied on [to] effect an increase of the penalty in each instance." *Id.* at 256. Consequently, the court held that there was insufficient evidence to support the decision that the convictions and commissions of crimes followed the requisite conviction-crime sequence. *Id.*

Although the State was unable to provide evidence of the date on which Petitioner's criminal solicitation offense occurred, *Doc. 14-1*, Ex. I, at 13-14, it explained that Petitioner's sentencing argument "depend[ed] on the possible, but unlikely, premise that [Petitioner] was convicted in late 2010 of a crime that happened at least six years before the date of conviction." *Id.* at 14. Persuaded by the unlikeliness of this premise, the Court of Appeals affirmed the district court's sentencing enhancement. In so doing, it relied upon *State v. Graham*, 81 P.3d 556 (N.M. Ct. App. 2003), *reversed on other grounds by* 109 P.3d 285, in which the defendant raised for the first time on appeal the

sequencing of his convictions under the habitual offender act. The *Graham* court determined that the defendant's argument, without an adequate record, was insufficient to justify remand. *Id.* at 558. Following that rationale in this case, the Court of Appeals proposed to affirm Petitioner's convictions but invited the filing of a petition for habeas corpus pursuant to New Mexico Rule 5-802.

Petitioner followed through with the invited state habeas filing, on May 7, 2018, when he raised the issue of a purportedly illegal sentence in his Supplemental Amendment. Unfortunately for Petitioner, though, he provided no argument or basis on which the Court could find in his favor on this issue.

Notably, federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis*, 222 F.3d at 1258. Petitioner has failed to make such a showing. Nor has he demonstrated, as he must, that the state court's affirmance of his sentence constitutes an unreasonable application of federal law or was based on an unreasonable determination of facts in light of the evidence. Pursuant to 28 U.S.C. § 2254(e)(1), determinations of factual issues made by a state court are presumed correct, and it is a petitioner's burden to "rebut[] the presumption of correctness by clear and convincing evidence." Here, Petitioner has done nothing to overcome the presumption in favor of the state court's determination. The Court recommends denying his Petition on this final ground.

## V.     Recommendations

For the reasons set forth herein, the Court recommends that Petitioner's § 2254 Petition be denied and dismissed with prejudice. The Court further recommends that a certificate of appealability be likewise denied.

_____
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**