IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCOTT ALLEN FOSTER,

      Petitioner,

v.                                                                                                                                          No. CIV 18-0429 JB\KBM

RAYMOND SMITH, Warden, and
HECTOR BALDERAS, Attorney General
for the State of New Mexico,

      Respondents.

## MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, filed June 19, 2019 (Doc. 17)("PF&RD"); and (ii) the Petitioner's Objections to Report and Recommendations, filed July 5, 2019 (Doc. 18)("Objections"). On May 8, 2019, the Court referred, pursuant to 28 U.S.C. § 636(b), this case to the Honorable Karen B. Molzen, United States Magistrate Judge, for a report and recommendation. See Order of Reference Relating to Prisoner Cases, filed May 8, 2019 (Doc. 4). Magistrate Judge Molzen issued the PF&RD on June 19, 2019, recommending that the Court deny Petitioner Scott Allen Foster's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed May 7, 2018 (Doc. 1)("Petition"), and also that the Court deny relief on the grounds stated in Foster's Supplemental Amendment, filed August 13, 2018 (Doc. 7)("Supplement").

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a magistrate judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Finally, when resolving objections to a magistrate judge's proposal, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Prop., with Bldgs, Appurtenances, Improvements, and Contents, Known as: 2121 E. 30th St., Tulsa, Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(internal quotation marks omitted)(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the United States

Court of Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act[, 28 U.S.C. §§ 631-39], including judicial efficiency." One Parcel, 73 F.3d at 1059 (citations omitted).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, [has] adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[1]

---

[1]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States of America -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding *or ruling* on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereinafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district

---

1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition.

judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (footnotes omitted).

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (alteration added by One Parcel)(quoting Moore v. United States, 950 F.2d at 659 ("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard"). In One Parcel, the Tenth Circuit noted that, although the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, the Tenth Circuit deemed the issues waived on appeal because doing so would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendation "on . . . dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a 'de novo determination' rather than *de novo* hearing, Congress intended to permit

whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b); and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a de novo review of a party's timely, specific objections to the Magistrate Judge's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence, . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987)(per curiam).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist.

No. 42, 8 F.3d 722, 724 (10th Cir. 1993)(citation omitted). The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the objecting party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766. The Tenth Circuit has explained that brief district court orders that "merely repeat[] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676. See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

**ANALYSIS**

The Court has reviewed de novo Foster's Petition, his Supplement, Magistrate Judge Molzen's PF&RD, and Foster's Objections, and has determined that the Court should overrule Foster's Objections, and deny his Petition and Supplement.

In his Objections, Foster maintains, first, that the Court should grant his Petition, because his trial attorney, Randall Harris, was impaired by drugs and/or alcohol during his jury trial. See Objections at 1-2. He emphasizes that the trial court inquired about a possible impairment during jury selection, remarking to Mr. Harris: "You seem to be slurring your speech." Objections at 1-2. Additionally, he asserts that drugs were found at Mr. Harris's home at the time of his death, and that his autopsy report revealed that hydrocodone, ethanol, diazepam, and trazadone were in his system at the time of his death. See Objections at 2.

In her PF&RD, Magistrate Judge Molzen addresses similar arguments by Foster. In doing so, she notes that Foster's criminal jury trial took place in the County of Curry, Ninth Judicial District Court, State of New Mexico, the same court to which the Court must turn for evaluation of the State's rationale for denial of habeas relief. See PF&RD at 13. She explains that, on collateral review, the state trial court considered and rejected Foster's contention that Mr. Harris' drug and/or alcohol impairment rendered his representation of Foster ineffective. See PF&RD at 13 (citing Order Denying Petition for Writ of Habeas Corpus at 5,[2] No. D-905-CR-2013-00144, filed in state court January 12, 2018, filed in federal court January 18, 2019 (Doc. 14-6)("State

---

[2]The Order Denying Petition for Writ of Habeas Corpus is not the first document contained in Doc. 14-6, but, rather, begins on page 5 as delineated by the CM/ECF page numbers in blue at the top right of the document. When citing to the Order Denying Petition for Writ of Habeas Corpus, the Court cites to the CM/ECF page numbers.

Habeas Order")). Specifically, when the question of Mr. Harris' possible impairment arose during jury selection, the state trial court "directly addressed Mr. Harris about the issue and found that Mr. Harris was not impaired." See State Habeas Order at 8. The state trial court was "in close proximity to Mr. Harris and made an informed ruling on the issue of Mr. Harris's impairment." State Habeas Order at 8. According to the state trial court, neither its personal observations nor the trial record supported the conclusion that Mr. Harris was impaired during his representation of Foster at trial. State Habeas Order at 9.

In her analysis of this asserted ground for relief, Magistrate Judge Molzen recounted the testimony from Mr. Harris's former administrative assistant, Debby Phillips, at the state evidentiary hearing. See PF&RD at 13. Phillips worked closely and consistently with Mr. Harris before and during Foster's trial, and swore that Mr. Harris was not impaired by drugs and/or alcohol at the time of jury selection or on the day of trial. See State Habeas Order at 8.

Ultimately, the state trial court applied the Strickland v. Washington, 466 U.S. 668 (1984)("Strickland"), test and concluded that Foster failed to show that Mr. Harris' representation was not that of a "reasonable, competent attorney" or that, but for some error by Mr. Harris, there was a "reasonable probability that the result of the conviction proceedings would have been different." State Habeas Order at 9. Acknowledging that the state trial court was in an ideal situation to personally observe and evaluate Mr. Harris' purported impairments, Magistrate Judge Molzen, in turn, concluded that Foster failed to satisfy his burden under 28 U.S.C. § 2254(d). That is, he failed to demonstrate that the state trial court determined the facts concerning Mr. Harris' purported impairment in an unreasonable manner or that its decision under Strickland was contrary to or involves an unreasonable application of clearly established federal law. Having reviewed the

record as a whole, the Court agrees with that determination and with the conclusion that there is at least a reasonable argument that Mr. Harris satisfies Strickland's deferential standard.

Foster makes one new attempt to establish Mr. Harris' impairment in his Objections. He offers what he submits is a $33,000.00 check showing that Mr. Harris was "in Rehab at the time he should have been preparing for trial." Objections at 2. The check, dated September 27, 2013, is payable to the order of "Betty Ford Clinic" and includes the following handwritten memo: "MR#11695023 Randall H. IP." Objections at 14 (providing a copy of the check). Foster does nothing to authenticate the check, but refers the Court to a Tenth Circuit case in support of his position that it constitutes evidence of ineffective assistance of counsel. See Objections at 2 (citing Thomas v. Nelson, 117 F. App'x 652 (10th Cir. 2004)(unpublished)).

Thomas v. Nelson, like this case, involves a habeas petitioner's allegations of a drug-impaired trial attorney. In that case, the petitioner's trial attorney was addicted to crack cocaine and, during the week before the scheduled trial, sought inpatient treatment for his addiction. See 117 F. App'x at 653. Contrary to his representation to the state trial court that he met with the petitioner approximately four times in the week leading up to trial, a disciplinary decision revealed that he had actually been in an inpatient drug-treatment program during that time. See 117 F. App'x at 654 & n.3. It also was uncontroverted that he failed to perform certain pretrial tasks, including filing pretrial motions and attending the final pretrial conference. See 117 F. App'x at 653. The petitioner filed a § 2254 petition, alleging that because of his attorney's impairment and inadequate preparation, he was coerced into pleading guilty and foregoing trial in violation of his rights under the Sixth Amendment to the Constitution of the United States. See 117 F. App'x at 653. The Tenth Circuit held that the federal district court prematurely dismissed

the petitioner's § 2254 petition without an evidentiary hearing on his ineffective assistance of counsel claim. See 117 F. App'x at 653.

Although there are factual similarities between this case and Thomas v. Nelson, the takeaway from Thomas v. Nelson is not that drug addiction, standing alone, amounts to ineffective assistance of counsel. Instead, under the circumstances in Thomas v. Nelson, the Tenth Circuit determined that the petitioner had "provided a sufficient record to merit the opportunity to present evidence in support of his claim concerning [his trial counsel's] inadequate preparation." 117 F. App'x at 658. Important facts here, however, make this case distinguishable. First, and perhaps most important, Foster's unauthenticated check to the Betty Ford Clinic is dated nine months before Foster's jury trial. It does not demonstrate, as Foster maintains, that "Mr. Harris was in Rehab at the time he should have been preparing for trial." Objections at 2. Second, Foster does not assert that his trial attorney's inadequate preparation coerced him into giving up his right to a jury trial. Rather, Foster was convicted at the conclusion of a jury trial, a trial at which the state court had the opportunity to observe and evaluate Mr. Harris's performance. The state trial court determined that Mr. Harris was not impaired and found his performance to be that of a reasonable, competent attorney. Even if Mr. Harris spent time in an inpatient rehabilitation facility in 2013 for a drug addiction, the Court is satisfied that no evidentiary hearing is required on Foster's Petition, which the Court will deny with respect to his allegation of ineffective assistance of counsel.

Next, Foster maintains that the Court should grant his Petition as to Ground Two. See Objections at 4. In Ground Two, which Foster entitles "Convicted Felon Michael Robison [sic]," he details various concerns about the use of Michael Robinson as a confidential informant and a

witness.  Petition at 7; Attachment to Petition[3] at 12-13, filed May 7, 2018 (Doc. 1-1).  In the PF&RD, Magistrate Judge Molzen does not pass on this allegation's merits, concluding that it is procedurally defaulted.  The Court agrees that it should not consider Ground Two of Foster's Petition absent some demonstration by Foster of cause and prejudice for failing to comply with the State's procedural rules or a fundamental miscarriage of justice.  See Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999).  To show "cause" for failing to comply with the State's procedural rules, Foster must show that "some objective factor external to the defense impeded his compliance with New Mexico's procedural rules."  Watson v. New Mexico, 45 F.3d 385, 388 (10th Cir. 1995)(citations and quotation marks omitted).  He has not made this showing, in his Objections or otherwise.

To demonstrate a "fundamental miscarriage of justice," a petitioner must make a "colorable showing of factual innocence."  Demarest v. Price, 130 F.3d 922, 941 (10th Cir. 1997)(citation omitted).  A claim of factual innocence requires a petitioner to "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  Frost v. Pryor, 749 F.3d 1212, 1232 (10th Cir. 2014)(citation and quotation omitted).  This evidence must be so convincing that, had it been introduced at trial, no reasonable juror would find the petitioner guilty.  See Frost v. Pryor, 749 F.3d at 1232.  Foster has submitted no new evidence to make a showing of factual innocence, but instead offers his self-serving assurance that he is

---

[3]The Court could not identify the first document Foster attaches to his Petition which constitutes the first twenty-one pages of Doc. 1-1, but notes that it appears to be a recitation of facts on which Foster bases a writ of habeas corpus.  See Attachment to Petition at 1-21, filed May 7, 2018 (Doc. 1-1).

"actually innocent." Objections at 4. His procedurally defaulted claims may not proceed under the "fundamental miscarriage of justice" test. Moreover, the Court agrees that his second ground for relief cannot be easily disposed of on the merits. Accordingly, Foster's failure to seek certiorari review of the claims in Ground Two of his Petition is not excused, and the Court will not consider this allegation.

Some of the assertions in Foster's Objections as to Ground Two do not relate to Robinson, but Foster asserts them in his Petition under the heading "Additional Acts Showing Ineffective Assistance of Counsel." For example, he maintains that the video that the State suggests shows the drug transaction was "tampered with" and that, "[h]ad Mr. Harris investigated and retained an expert[,] he would have came [sic] to the same conclusion." Objections at 3. Foster faults Mr. Harris for failing to investigate why his words were rendered inaudible in the video, insisting that in an unaltered version of the video, he would have been heard stating "I do not sell drugs." Objections at 3-4.

In the State Habeas Order denying Foster's state habeas petition, the state trial court discusses testimony that James Lilly -- a "digital architect" -- presented to the effect that the video taken by undercover officer Kandi Garcia had been "modified (tampered with)." State Habeas Order at 15. Foster's state habeas attorney testified that Mr. Harris had taken steps to try to improve the quality of the audio with Foster's approval. See State Habeas Order at 15. The state trial court found that "any indication of tampering is to be credited to Mr. Harris as an attempt to effectively represent [Foster]." State Habeas Order at 15. The state trial court further determined that there was no evidence that the State had tampered with the video and that the issue, as presented by Foster, is "completely unsupported by fact." State Habeas Order at 16. Here, Foster

has not demonstrated that the state trial court's finding as to the alleged manipulation of the video was made in an unreasonable manner, or that it was contrary to or involved an unreasonable application of clearly established federal law. Moreover, the Court agrees with Magistrate Judge Molzen's determination that Foster's arguments regarding Mr. Harris's failure to investigate involves decisions related to trial tactics and that Foster has not overcome a presumption of sound trial strategy. The Court will deny the Petition with respect to Foster's assertion that the State tampered with video evidence.

Next, Foster contends that Mr. Harris performed inadequately when he neglected to file a motion to suppress before trial. Objections at 4. Foster does not articulate the evidence that should have been suppressed or the grounds on which Mr. Harris should have moved for its suppression. As with Mr. Harris' pretrial investigation efforts, Magistrate Judge Molzen found that Mr. Harris' failure to file a motion to suppress fell within the ambit of decisions related to trial tactics for which Mr. Harris enjoys a presumption of sound trial strategy. PF&RD at 12. Again, the Court agrees with Magistrate Judge Molzen. Foster has not demonstrated that Mr. Harris' representation, and specifically his failure to file a motion to suppress, was not that of a reasonable, competent attorney. Moreover, he has not demonstrated that he would not have been convicted had Mr. Harris moved to suppress certain evidence. The Court will overrule Foster's Objections as to this issue and will deny his Petition.

Foster continues to insist in his Objections that Mr. Harris had an "undisclosed irreconcilable conflict," namely his employment of Monica Eileen Caroland, the wife of Phil Caroland, who led the investigation that resulted in charges against Foster. See Objections at 5. In her PF&RD, Magistrate Judge Molzen concludes that Foster has not met his burden with respect

to a conflict of interest, relying on an affidavit in which Mrs. Caroland states that she did not work with Mr. Harris' law firm in 2013, having left in December, 2012. See PF&RD at 16-17. Magistrate Judge Molzen also notes that the state trial court concluded that no conflict existed, and she characterizes this determination and the state trial court's rationale as "perfectly reasonable." PF&RD at 17. In evaluating the purported conflict, the state trial court considered an affidavit from Mrs. Caroland stating that her employment with Mr. Harris' firm ended in December, 2012, as well as testimony from Mr. Caroland and Phillips corroborating this statement. See State Habeas Order at 11-12.

In his Objections, Foster posits that "[e]vidence shows that [Mrs. Caroland] was working at the Law firm," referring the Court to two exhibits attached to his Petition. Objections at 5 (citing Attachment to Petition at 68, 81). The first exhibit is a March 15, 2018, letter to Foster from the Law Offices of the Public Defender. Letter from Judy Gonzales to Scott Foster (dated March 15, 2018)("First Letter"), Attachment to Petition at 81. Therein, the Custodian for Public Records for the New Mexico Public Defender's Department informs Foster that a notice appeared in the Bar Bulletin, indicating that Mrs. Caroland, previously of the Harris Law Firm, changed her New Mexico State Bar status to inactive on April 12, 2013. See First Letter, Attachment to Petition at 81. The second exhibit is an August 14, 2014, letter to Richard Mackenzie from Phillips, Mr. Harris' assistant, which references Foster's criminal matter. Letter from Debby Phillips to Richard Mackenzie (dated August 14, 2014)("Second Letter"), Attachment to Petition at 68. The firm's letterhead includes both "Randall M. Harris, Attorney at Law" and "Monica E. Caroland, Attorney at Law." See Second Letter, Attachment to Petition at 68. Foster posits that "[t]hese documents

constitute reason to have an evidentiary hearing as they contradict [Mrs. C]aroland[']s affidavit." Objections at 5.

Neither Mrs. Caroland's change to inactive status in April, 2013, nor the letterhead retaining her name in August, 2014, render the state habeas court's determination unreasonable. Indeed, neither fact establishes that Mr. Harris' firm employed Mrs. Caroland during the time of Mr. Harris's representation of Foster in 2013. The Court overrules Foster's Objections as to his claim of an irreconcilable conflict and denies his Petition as to this ground.

Foster next takes issue with Magistrate Judge Molzen's treatment of Ground Four of his Petition -- his claim that neither Mr. Caroland nor Kandi Garcia had the proper law enforcement appointments. In his Petition, Foster argues that, if Mr. Harris had conducted a basic investigation of their commissions, he would have been able to prevent them from testifying at trial and would have nullified the Grand Jury Indictment. See Attachment to Petition ¶ 76, at 14-15. While the State has maintained that the proper certifications were not on file for Mr. Caroland because of a clerical error, Foster insists that "[D]eputy [C]aroland was not certified nor commissioned from 2007-2013." Objections at 6 (citing Attachment to Petition at 98, 117-19; Appendix at 51-54, filed June 4, 2018 (Doc. 6)). In contrast, the state habeas court, which heard testimony from Private Investigator William Elliott, determined that Mr. Caroland was at all relevant times a certified law enforcement officer but that, through no fault of his own, a clerical error had caused "an issue" with the filing of his commission card. State Habeas Order at 46. Having reviewed the documents that Foster references in his Objection, the Court is satisfied that they do not show the state habeas court's finding on this issue to be unreasonable. Rather, the Court agrees with Magistrate Judge Molzen's assessment that Foster's claims should not prevail because he has not demonstrated

prejudice by virtue of some issue with the officers' commissions. Moreover, the Court agrees that Mr. Harris' failure to pursue a challenge Mr. Caroland's and Garcia's commissions is not constitutionally defective. The Court overrules Foster's Objections in this regard, and will deny his Petition as to Ground Four.

Finally, Foster objects to Magistrate Judge Molzen's rejection of his double jeopardy claim. Magistrate Judge Molzen determined that the Court of Appeals of New Mexico's denial of this claim is not contrary to, and does not involve, an unreasonable application of clearly established federal law. Foster now quotes from a portion of his arrest warrant, which states: "Molett took the drugs from Kirven and took Officer Garcia to the back room and was provided with five (5) large rocks of what appeared to be crack cocaine." Objections at 7 (quoting Affidavit for Arrest Warrant, Attachment to Petition at 158). He does not include, however, the two preceding sentences, which state: "Molett came into the living room[,] stopped[,] and looked at Foster. Foster than [sic] told him that he could sell the drugs." Affidavit for Arrest Warrant, Attachment to Petition at 158. Foster insists that his "drug trafficking charge should be vacated under the double jeopardy issue since there was no sell [sic] of drugs by Mr. Foster." Objections at 8. Yet, regardless whether Foster personally handed any drugs to Garcia in exchange for money, the Court is satisfied that the State nevertheless presented evidence against Foster on each element of trafficking a controlled substance. As used in the New Mexico Controlled Substances Act, N.M. Stat. Ann. §§ 30-31-1 to 30-31-41, "'distribute' means to deliver," and to "'deliver' means the actual, constructive or attempted transfer [of a controlled substance] from one person to another." N.M. Stat. Ann. § 30-31-2(G), (J). A defendant still "transfers" a controlled substance in violation of the Controlled Substances Act even when he or she does so through an intermediary.

See, e.g., State v. Bello, 2017-NMCA-049, ¶¶ 14-15, 399 P.3d 380, 385 (rejecting the defendant's argument that he was subject to double jeopardy where he was prosecuted for both a drug transaction through an intermediary as well as for a drug transaction in which he had direct involvement); State v. Montes, 2007 NMCA 083, ¶ 29, 164 P.3d 102, 109 (reasoning that the defendant could be liable for distribution of drugs, even though he was not present at the time of the sale, if he "caused the transfer that took place"). Similarly, the applicable jury instruction provides that a defendant is guilty of distribution of a controlled substance if he transferred or "caused the transfer" of drugs to another. NMRA, Crim. UJI 14-3103.

As Magistrate Judge Molzen notes in her PF&RD, the Court of Appeals of New Mexico was able to discern two separate factual bases for Foster's drug trafficking and conspiracy convictions. The Court of Appeals of New Mexico explained that Foster, Kirven, and Molett had an agreement to participate in the sale of drugs that was "separate and apart from the drug sale to Robinson." Second Notice Proposed Summary Disposition at 93, filed January 18, 2019 (Doc. 14-1). As for the actual sale of drugs, the arrest warrant asserts and the State presents evidence that Foster caused the transfer of drugs to Garcia, albeit through an intermediary. The Court agrees with Magistrate Judge Molzen's determination that Foster's alleged conduct with respect to the conspiracy agreement and the drug transaction was non-unitary and that it is, therefore, unnecessary for the Court to determine whether the legislature intended multiple punishments. See Lucero v. Kerby, 133 F.3d 1299, 1320-22 (10th Cir. 1998)(concluding that, although there was no significant separation of conduct by time or place, the acts related to the offenses were of a different quality or nature, and were therefore non-unitary). The Court concludes that the state court's application of federal law on the issue of double jeopardy is a reasonable one, as the acts supporting

Foster's convictions for drug trafficking and conspiracy were distinguishable. The Court will deny Foster's Petition with respect to his double jeopardy claim.

**IT IS ORDERED** that: (i) the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, filed June 19, 2019 (Doc. 17), is adopted; (ii) the Petitioner's Objections to Report and Recommendations, filed July 5, 2019 (Doc. 18), are overruled; (iii) the Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed May 7, 2018 (Doc. 1), is denied; (iv) the requests in the Petitioner's Supplemental Amendment, filed August 13, 2018 (Doc. 7), are denied; (v) the action is dismissed with prejudice; (vi) for the reasons stated in the Magistrate Judge's Proposed Findings of Fact and Recommended Disposition, Petitioner Foster has not made a substantial showing of a denial of a constitutional right; therefore, a certificate of appealability is denied; and (vii) a Final Order pursuant to rule 58 of the Federal Rules of Civil Procedure will be entered dismissing this action with prejudice.

                                                    _____
                                                    UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Scott Allen Foster
Lea County Correctional Facility
Hobbs, New Mexico

    *Petitioner pro se*

Hector Balderas
    New Mexico Attorney General
Jane Bernstein
    Assistant New Mexico Attorney General
New Mexico Attorney General's Office
Albuquerque, New Mexico

*Attorneys for the Respondents*